**Affirmed and Memorandum Opinion filed July 11, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00209-CV

---

### JAMES HOLLOMAN MAXWELL AND ALL OCCUPANTS, Appellants

### V.

### US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR JP MORGAN MORTGAGE ACQUISITION TRUST 2006-HE3 ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2006-HE3, Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 970179**

---

## M E M O R A N D U M    O P I N I O N

Appellants James Holloman Maxwell and all other occupants of his house (collectively Maxwell) appeal a judgment that granted possession of the house to a foreclosure-sale purchaser, appellee U.S. Bank National Association. Maxwell presents three issues. The first issue, resolved many times before, is whether alleged defects in the foreclosure created title issues that divested the county court

at law of jurisdiction. According to settled law, any such issues did not have this effect. Next, Maxwell contends his wife's homestead rights created a title issue that the county court at law lacked jurisdiction to resolve. Maxwell failed, however, to present evidence that his wife's homestead rights differed from his own, so her rights do not alter our jurisdictional analysis. The final issue is whether the county court at law's denial of Maxwell's jury trial request requires reversal. Denying Maxwell's request was error—the bank does not argue otherwise—but we conclude the error was harmless. We therefore overrule Maxwell's issues and affirm.

## BACKGROUND

In 2006, Maxwell obtained a loan from the bank secured by a deed of trust. The deed of trust recited that:

> If the Property is sold pursuant to [a trustee's sale], [Maxwell] or any person holding possession of the Property through [him] shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, [Maxwell] or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

Maxwell later defaulted on the note, and the bank foreclosed. The bank also purchased the property at the trustee's sale. Maxwell received notice to vacate the house, but he did not do so. The bank instituted a forcible detainer suit in the court below to obtain possession of the property.

As we discuss in detail later, a forcible detainer is an eviction action that determines who is entitled to possess property, but it does not determine who has title. In this forcible detainer action, the justice court determined that the bank was entitled to possess the property and evicted Maxwell. Maxwell appealed to the county court at law for trial de novo.

2

In the county court at law, Maxwell argued that title issues were so intertwined with the question of possession that they divested the court of jurisdiction to hear the case. He contended, among other things, that title issues existed because the bank had failed to comply with the deed of trust and his wife had homestead rights in the property. Maxwell also made a timely request for a jury trial and paid the required fee. The county court at law rejected Maxwell's arguments, concluding that it had jurisdiction. It also denied his request for a jury trial and proceeded with a bench trial. The court found that the bank was entitled to possession, and Maxwell appealed.

## ANALYSIS

We consolidate Maxwell's three appellate issues into two: (1) whether the county court at law had jurisdiction over the forcible detainer suit, and (2) whether its denial of a jury trial was harmless.

## I. The title questions Maxwell presented were not so inextricably intertwined with possession as to divest the county court at law of jurisdiction.

We begin with Maxwell's jurisdictional arguments. In his second and third issues, Maxwell contends that the county court at law lacked subject matter jurisdiction because (1) the foreclosure sale was improper and (2) his wife's homestead rights created a title issue that had to be determined to resolve the forcible detainer.

Subject matter jurisdiction is a question of law that we review de novo. *Graber v. Fuqua*, 279 S.W.3d 608, 631 (Tex. 2009). The issue may be raised for the first time on appeal, and the parties cannot waive it. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).

3

Jurisdiction to hear a forcible detainer action is expressly given to the justice court of the precinct where the property is located and, on appeal, to the county court at law for trial de novo. *Rice v. Pinney*, 51 S.W.3d 705, 708 (Tex. App.—Dallas 2001, no pet.); *see* Tex. Prop. Code Ann. § 24.004 (West 2000); Tex. R. Civ. P. 749. The appellate jurisdiction of the county court at law is confined to the jurisdictional limits of the justice court. *Rice*, 51 S.W.3d at 708; *Goggins v. Leo*, 849 S.W.2d 373, 375 (Tex. App.—Houston [14th Dist.] 1993, no writ).

Although a justice court has subject matter jurisdiction over forcible detainers, the justice court, and the county court at law on appeal, lack jurisdiction to resolve title disputes. *Black v. Wash. Mut. Bank*, 318 S.W.3d 414, 417 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd w.o.j.). Thus, a forcible detainer only addresses who has the right to possess the property, not who has title to it. *Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Rice*, 51 S.W.3d at 709; *see* Tex. R. Civ. P. 746.

As a result, when the right to possession cannot be determined without resolving a title dispute, neither the justice court nor the county court at law have jurisdiction. *Elwell v. Countrywide Home Loans, Inc.*, 267 S.W.3d 566, 568 (Tex. App.—Dallas 2008, pet. dism'd w.o.j.); *Rice*, 51 S.W.3d at 709. Of course, the mere existence of a title dispute does not deprive these courts of jurisdiction. If the title issue does not control the right to possession, it is of no moment. *Black*, 318 S.W.3d at 417. Instead the issue is whether "the question of title is so intertwined with the issue of possession, th[at] possession may not be adjudicated without first determining title." *Villalon v. Bank One*, 176 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

4

**A.** **Under the deed of trust, the bank's purchase of the property at a foreclosure sale entitled it to possession regardless of any defects in the sale or the bank's alleged noncompliance with other deed of trust provisions.**

Maxwell contends that the bank breached certain conditions of the deed of trust, thereby excusing his obligation to pay the note. Because he had no obligation to pay, Maxwell contends the bank had no right to foreclose. He also challenges the foreclosure by alleging that the foreclosing party was not entitled to enforce the note. He argues this wrongful foreclosure creates title issues that must be resolved to determine possession.

We disagree because, in his deed of trust, Maxwell promised that "[i]f the Property [wa]s sold pursuant to [a trustee's sale], [he] . . . [would] immediately surrender possession of the Property to the purchaser at that sale." This promise entitles the bank to possession as a foreclosure-sale purchaser, regardless of any prior defects.

So-called tenant-at-sufferance clauses, like the one quoted above, separate the issue of possession from the issue of title. *See Elwell*, 267 S.W.3d at 569; *Rice*, 51 S.W.3d at 711. Under these provisions, a foreclosure sale transforms the borrower into a tenant at sufferance who must immediately relinquish possession to the foreclosure-sale purchaser. *See Rice*, 51 S.W.3d at 711. As a result, "[a]ny defects in the foreclosure process . . . may not be considered in a forcible detainer action" because "they are not relevant." *Williams v. Bank of N.Y. Mellon*, 315 S.W.3d 925, 927 (Tex. App.—Dallas 2010, no pet.). Rather, the clause entitles the purchaser to possession if: (1) the party to be evicted is subject to the tenant-at-sufferance clause, and (2) the party seeking possession purchased the property at a foreclosure sale.[1] *Id.* Of course, the displaced party can still dispute the

_____

[1] By statute, a claim for forcible detainer also requires the plaintiff to prove that it gave

5

purchaser's title, but it must bring a separate suit to do so. *Salaymeh*, 264 S.W.3d at 436; *Rice*, 51 S.W.3d at 709.

These principles dispose of Maxwell's argument that the bank's failure to comply with the deed of trust divested the county court at law of jurisdiction. Regardless of whether the bank adhered to the deed of trust before Maxwell defaulted, it is undisputed that the bank foreclosed. Regardless of who could technically enforce Maxwell's note, it is undisputed that the bank bought the property at a foreclosure sale. Therefore, regardless of whether Maxwell's allegations have merit, the tenant-at-sufferance clause entitles the bank to possession as a foreclosure-sale purchaser. *See Salaymeh*, 264 S.W.3d at 436; *Rice*, 51 S.W.3d at 711.[2] If Maxwell wishes to contest the foreclosure or to attack the bank's alleged breaches, he must do so in a separate proceeding.

### B.    Maxwell introduced no evidence that his wife's homestead interest was not subject to the deed of trust's tenant-at-sufferance clause.

As part of his third issue, Maxwell contends the county court at law erred by concluding it had jurisdiction over this claim notwithstanding his wife's homestead interest in the property. In the county court at law, Maxwell argued that "[s]ince [his wife] [wa]s asserting her homestead rights to the subject property, she ha[d] a . . . right to possession superior to [the bank]."[3] As we explain below, however,

---

proper notice to the tenant at sufferance and that the tenant refused to vacate the premises. Tex. Prop. Code Ann. §§ 24.002, 24.005 (West 2000).

[2] Maxwell also contends that the trial court erred by not allowing him to present evidence of the bank's "material breach of the deed of trust." Even assuming that the bank breached the deed of trust and the county court at law excluded evidence of this breach, the tenant-at-sufferance clause made any breach irrelevant to possession. *See Williams*, 315 S.W.3d at 927. "Evidence which is not relevant is inadmissible," Tex. R. Evid. 402, so the county court at law, assuming it excluded evidence, did not err by doing so.

[3] On appeal, Maxwell contends that he raised this issue in filings captioned "DEFENDANT'S MOTION TO DISMISS AND/OR PLEA IN ABATEMENT" and "DEFENDANT'S MOTION IN LIMINE OR IN THE ALTERNATIVE TRIAL BRIEF." To

the mere existence of the wife's homestead rights did not create title issues. Indeed, Maxwell himself probably had homestead rights, but he was bound by the deed of trust, so these rights are irrelevant to our analysis.

Thus, the issue is whether the wife's homestead interest was subject to the tenant-at-sufferance clause, as Maxwell's was. A homesteader's rights are generally limited to the interest available when she began homesteading. S*ee Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). If a homesteader begins living on a property subject to a deed of trust, the homesteader's interest is subject to the deed of trust and, by extension, the deed's tenant-at sufferance clause. *Cf. Bruce v. Fed. Nat'l Mortg. Ass'n*, 352 S.W.3d 891, 893 (Tex. App.—Dallas 2011, pet. denied) (wife's rights to home as marital property subject to husband's deed of trust). As a result, absent evidence that Maxwell's wife homesteaded prior to execution of the deed of trust, her interest— like Maxwell's—was subject to the bank's deed, and her eviction—like Maxwell's—did not implicate title issues and could be resolved through the tenant-at-sufferance clause.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider the relevant evidence submitted by the parties as necessary to resolve the jurisdictional issue. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) (discussing governmental immunity). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea and submit the issue to the fact-finder. *Id.* at 227–28. If the evidence is undisputed or fails to raise a fact issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard generally

the extent these filings raised the jurisdictional issue discussed above, we construe them as pleas to the jurisdiction. These filings contained no jurisdictional facts beyond the undisputed allegations discussed in the opinion.

7

mirrors that of a summary judgment. *Id.*; *City of Seagoville v. Lytle,* 227 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.).

At a pretrial hearing, Maxwell's counsel summarized the undisputed facts that allegedly deprived the county court at law of jurisdiction:

> We believe that because of [the] homestead title issue and his wife . . . they were married [prior to the execution of the deed of trust, and] she didn't sign off on this deed of trust, therefore, her homestead rights are in dispute here. That's a title issue in and of itself.

Counsel did not request to examine Maxwell's wife. Nor did he introduce evidence of her homestead rights, nor make an offer of proof as to what that evidence would be.[4]

At this point, the bank did not dispute that Maxwell was married when he signed the deed of trust, nor did it dispute that his wife had homestead rights in the property.[5] Based upon these undisputed facts, the county court at law overruled Maxwell's plea to the jurisdiction, and the trial began.

For analytical purposes, we assume that the operative facts Maxwell alleged are true: (1) Maxwell was married when he signed the deed of trust; (2) his wife did not sign the document; and (3) by the time of trial, his wife had homestead rights in the property.

These facts do not demonstrate a title issue divesting the court of subject matter jurisdiction because there is no evidence that Maxwell's wife acquired

---

[4] In his appellant's brief, Maxwell contends the county court at law "failed to hear any argument or consider any evidence" regarding his jurisdictional complaints. The trial court did hear argument on the issues Maxwell raised pretrial, however, and Maxwell never sought to introduce any evidence, even when the trial court asked and encouraged him to do so following the bank's case-in-chief.

[5] At trial, the county court at law noted the deed of trust's description of Maxwell as "'an unmarried person.'"

8

homestead rights that were senior to the bank's deed of trust. Generally, a deed of trust's tenant-at-sufferance clause binds subsequent occupants whose interests are junior to the deed of trust. *See, e.g.*, *Bruce*, 352 S.W.3d at 893 (wife subject to tenant-at sufferance clause where property purchased after marriage, wife did not sign deed of trust, and wife obtained right to possess property in divorce); *U.S. Bank Nat'l Ass'n v. Farhi*, No. 05-07-01539-CV, 2009 WL 2414484, at *3 (Tex. App.—Dallas Aug. 7, 2009, no pet.) (mem. op.) (subsequent transferee subject to tenant at sufferance provision); *see also Black*, 318 S.W.3d at 418 (where grantor was subject to deed of trust, quitclaim deed passed only grantor's rights and grantee was therefore also subject to tenant-at-sufferance clause).

Such subsequent occupants may not have agreed to the tenant-at-sufferance clause, but the grantor cannot convey more than he has. *See Bruce*, 352 S.W.3d at 893; *see also Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.— Houston [1st Dist.] 1990, no writ) ("When the owner of real estate executes a valid deed of trust, and then conveys an interest in the mortgaged property to a third party, the rights of the mortgagor's vendee are subject to the rights held by the beneficiary of the deed of trust."). As a result, a grantor subject to a tenant-at-sufferance clause cannot convey an interest in the property free of the clause. Accordingly, both the party who agreed to the deed of trust initially and any subsequent occupants become tenants at sufferance following foreclosure. *See Bruce*, 352 S.W.3d at 893.

Similarly, a homestead right cannot rise any higher than the right, title, or interest acquired by the homestead claimant. *Inwood N. Homeowners' Ass'n, Inc.*, 736 S.W.2d at 635; *Sloan v. Owners Ass'n of Westfield, Inc.*, 167 S.W.3d 401, 405 (Tex. App.—San Antonio 2005, no pet.). Thus, like other subsequent takers, homesteaders cannot acquire title free of prior encumbrances. *Inwood N.*

*Homeowners' Ass'n, Inc.*, 736 S.W.2d at 636.

Therefore, to succeed in his plea to the jurisdiction, Maxwell had to establish that his wife acquired homestead rights in the property *before* it became subject to the deed of trust. "[I]n order to establish homestead rights there must be proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead." *Chapman v. Olbrich*, 217 S.W.3d 482, 496 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

The record contains no evidence of when Maxwell and his wife began using the property as a homestead. Maxwell has never contended that this use began prior to, or even concurrently with, his execution of the deed of trust. As a result, Maxwell failed to establish that his wife's homestead rights were not subject to the deed of trust's tenant-at-sufferance clause, and therefore failed to introduce evidence of a title issue divesting the trial court of jurisdiction. Maxwell failed to establish that his wife's homestead rights were superior to the bank's deed of trust, so we conclude that she, like Maxwell, was a tenant at sufferance following foreclosure. As a result, like Maxwell's eviction, the eviction of Maxwell's wife did not require the county court at law to determine title to the property, but only required it to apply the tenant-at-sufferance clause.

Because the undisputed facts do not establish that the county court at law lacked jurisdiction, the court properly denied Maxwell's plea to the jurisdiction as a matter of law. *See Unifund CCR Partners*, 337 S.W.3d at 926–27. Although we have an independent obligation to address subject matter jurisdiction, *see Tex. Ass'n of Bus.*, 852 S.W.2d at 445, nothing in the record alters this conclusion. Given the absence of contrary evidence, we agree with the county court at law's determination that title issues did not deprive it of jurisdiction. We therefore overrule Maxwell's second and third issues.

10

**II. The county court at law's erroneous denial of Maxwell's request for a jury trial was harmless because the bank was entitled to an instructed verdict.**

In his first issue, Maxwell contends that the county court at law's denial of his jury trial request constitutes harmful error.[6] The bank contends that any error in denying the jury trial request was harmless, but it does not argue that denial of the request was proper.

The record shows that Maxwell timely requested a jury trial and paid the required fee. *See* Tex R. Civ. P. 216. We therefore hold that the county court at law was required to grant Maxwell a jury trial and that it erred by denying his request.[7] Nevertheless, we agree with the bank that this error was harmless.

"A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified." *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991); *In re J.N.F.*, 116 S.W.3d 426, 437 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Weng Enters.,*

---

[6] Maxwell argues that the Seventh Amendment to the Constitution of the United States entitled him to a jury trial, along with the Texas Bill of Rights. The United States Supreme Court has held, however, that the Seventh Amendment's guarantee of a civil jury does not apply to the States. *See Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916); *see also McDonald v. City of Chicago*, 130 S. Ct. 3020, 3094 (2010) (Stevens, J., dissenting) (observing that Seventh Amendment has not been incorporated against the States). We therefore consider Maxwell's constitutional arguments under the Texas Constitution, which guarantees the right to trial by jury in state courts. *See* Tex. Const. art. I, § 15. We use his authorities interpreting the federal constitution to aid our analysis, however. *See Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex. 1992) ("Texas should borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful, but should never feel compelled to parrot the federal judiciary.").

[7] *See* Tex. Const. art. I, § 15 ("The right of trial by jury shall remain inviolate."); *Hardy v. Port City Ford Truck Sales, Inc.*, 693 S.W.2d 578, 579 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) ("The [trial courts] handle a very large number of cases yearly, and we can appreciate the need to move these cases along expeditiously. However, the right to trial by jury in a civil case, while not absolute, has always been jealously guarded in our democratic system of justice.").

11

*Inc. v. Embassy World Travel, Inc.*, 837 S.W.2d 217, 222 (Tex. App.—Houston [1st Dist.] 1992, no writ). To evaluate harm, we examine the trial evidence to determine whether an instructed verdict would have been appropriate.

A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

To obtain possession by a forcible detainer action, the bank had to show: (1) a substitute trustee's deed that conveyed the property to it after a foreclosure sale; (2) a deed of trust establishing a landlord-tenant relationship; (3) that it gave proper notice to vacate the premises; and (4) that Maxwell refused to vacate. *U.S. Bank Nat'l Ass'n v. Freeney*, 266 S.W.3d 623, 625 (Tex. App.—Dallas 2008, no pet.).

At trial, the bank introduced the required substitute trustee's deed and deed of trust. Maxwell admitted that he received notice to vacate from the bank more than a year before trial and that he had not done so. Indeed, Maxwell does not argue that any questions of fact existed regarding the bank's statutory compliance with notice requirements—or with any elements of the forcible detainer for that matter.

Because the bank conclusively established all elements of a forcible detainer, it was entitled to an instructed verdict. As a result, a jury trial could not have produced a different result, and the court's error in denying Maxwell a jury trial was harmless. *See Weng Enters.*, 837 S.W.2d at 222.

In his reply brief, Maxwell does not argue that the evidence at trial created fact issues precluding an instructed verdict. Nor does he argue that denial of his jury right otherwise constituted reversible error. Instead, Maxwell asks us to reverse in order to "send a message to the trial court below." We cannot do as Maxwell requests.

We have already held that the trial court violated Maxwell's constitutional right to trial by jury, and no party disputes that the court was wrong to do so. But the rules of appellate procedure do not permit us to "send a message" through reversal. Instead, "[n]o judgment may be reversed on appeal [because] the trial court made an error of law unless," as relevant here, the error "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a). The Texas Supreme Court has told us that the denial of a jury trial request does not cause the rendition of an improper judgment against the requesting party if an instructed verdict against that party would have been proper. *See Halsell*, 810 S.W.2d at 372. Because the record shows that an instructed verdict against Maxwell would have been proper, the trial court's error did not result in an improper judgment against Maxwell. Accordingly, we overrule Maxwell's first issue.

## CONCLUSION

The record does not establish that the trial court lacked jurisdiction, and Maxwell has failed to demonstrate harm resulting from denial of his jury trial request. We therefore affirm the judgment.

/s/     J. Brett Busby
        Justice

Panel consists of Justices Frost, Brown, and Busby.